**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ARON DIBACCO, *et al.*,<br><br>  Substitute Plaintiffs for Carl Oglesby,<br><br>  v.<br><br>U.S. DEPARTMENT OF THE ARMY, *et al.*,<br><br>  Defendants. | **Civil Action No. 87-3349 (CKK)** |

**MEMORANDUM OPINION**
(January 18, 2017)

Carl Oglesby filed suit in 1987 challenging several agencies' responses to a Freedom of Information Act ("FOIA") request Mr. Oglesby submitted in August 1985. It is now 2017. Over the past twenty years, this case has gone through numerous rounds of summary judgment briefing and reached the United States Court of Appeals three times. Mr. Ogelsby himself died in 2011, but his daughter and the administrator of his estate have since been substituted as Plaintiffs and continue his efforts. After a very limited remand from the Court of Appeals in 2015, the latest round of cross-motions for summary judgment are currently before the Court.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court concludes that Defendants are entitled to summary judgment on all remaining

---

[1] The Court's analysis has focused on the following documents: Defs.' Renewed Mot. for Summ. J. ("Defs.' Mot."), ECF No. [327]; Pls.' Renewed Mot. for Partial Summ. J. and Other Relief and Reply to Defs.' Opp'n to Pls.' Mot. for Partial Summ. J. and Other Relief ("Pls.' Mot."), ECF No. [330]; Defs.' Opp'n to Pls.' Renewed Mot. for Partial Summ. J. and Reply in Support of Defs.' Renewed Mot. for Summ. J. ("Defs.' Opp'n"), ECF No. [335]; Pls.' Reply to Defs.' Opp'n to Second Renewed Mot. for Partial Summ. J., Etc. ("Pls.' Reply"), ECF No. [339]. In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. See LCvR 7(f).

issues.  The Court finds that Defendants have satisfied their burden of showing that the minimal redactions made to the documents that were released to Plaintiffs during the latest appeal are justified under FOIA Exemptions 1 and 3.  The Court also rejects Plaintiffs' argument that the documents produced during the appeal indicate that any Defendant has not completed an adequate search for responsive documents.  Accordingly, the Court GRANTS Defendants' [327] Renewed Motion for Summary Judgment and DENIES Plaintiffs' [330] Renewed Motion for Partial Summary Judgment and Other Relief.

## I. BACKGROUND

> Since the early 1970s, [Carl] Oglesby has relentlessly pursued the story of General Reinhard Gehlen, who served as chief of a Nazi spy ring during World War II and who allegedly later negotiated an agreement with the United States which allowed his spy network to continue in existence despite post-war de-nazification programs. After World War II, his group, then known as the Gehlen Organization, was reportedly reconstituted as a functioning espionage network under U.S. command. According to Oglesby, control of the Gehlen Organization shifted back to the newly-sovereign West German Federal Republic as the BND (for Bundesnachrichtendienst, or "the Federal Intelligence Service") after ten years of U.S. control.

*Oglesby v. U.S. Dep't of Army* ("*Oglesby II*"), 79 F.3d 1172, 1175 (D.C. Cir. 1996).[2]  To that end, between August 21 and September 19, 1985, Carl Oglesby submitted nearly identical Freedom of Information Act requests to the Central Intelligence Agency, the United States Departments of the Army and State, the National Security Agency, the Federal Bureau of Investigation, and the National Archives and Records Administration ("NARA").  *See Oglesby v. U.S. Dep't of Army* ("*Oglesby I*"), 920 F.2d 57, 60 (D.C. Cir. 1990).  "[W]ith minor variations," Oglesby sought the following records from each agency:

---

[2] Given the lengthy proceedings in this case to date, the background of this case has been described in a number of prior opinions.  The Court sees no reason to reinvent the wheel here. Accordingly, the first portion of the background section in this Memorandum Opinion is largely derived from the Court's September 26, 2013 Memorandum Opinion.

(1) records on General Gehlen during the period 1944 through 1956;

(2) records on meetings held at Fort Hunt, Virginia, in the summer of 1945 between General Gehlen and U.S. Army General George Strong and Office of Strategic Services ("OSS") officer Allen Dulles;

(3) records on the U.S. Army's "Operation Rusty," carried out in Europe between 1945 and 1948;

(4) records on post-war Nazi German underground organizations such as "Odessa," "Kamaradenwerk," "Bruderschaft," "Werewolves" and "Die Spinne";

(5) records on the OSS's "Operation Sunrise" carried out in 1945; and

(6) records on Gehlen's relationship with William J. Donovan and Allen Dulles of the OSS, records on Operation Rusty and Gehlen collected by the Central Intelligence Group ("CIG"), and records on the Nazi underground organization "La Arana."

*Id.* The agencies released a total of 384 pages, many with redactions, and withheld other responsive documents. *Id.* The Army, CIA, NARA, and NSA denied Mr. Oglesby's request for a fee waiver. *Id.* at 61.

Mr. Oglesby filed suit on December 11, 1987. The District Court, per Judge Norma Holloway Johnson, granted summary judgment in favor of the Defendants. 5/22/1989 Mem. Op. & Order. On appeal, the D.C. Circuit found that Oglesby had failed to exhaust his administrative remedies with respect to his requests to the Army, CIA, FBI, NSA, and NARA, but had constructively exhausted his administrative remedies concerning his request to the Department of State. *Oglesby I*, 920 F.2d at 59-60. The court remanded the case, instructing Oglesby to exhaust his remedies, and leaving for the District Court the issue of whether the Department of State conducted an adequate search in response to Oglesby's request. *Id.*

Following the *Oglesby I* decision, Oglesby exhausted his administrative remedies, and once again challenged the Defendants' responses. *Oglesby II*, 79 F.3d at 1176. The District Court granted summary judgment in favor of the Defendants, concluding that each Defendant agency

conducted an adequate search for documents and properly withheld information pursuant to various FOIA exemptions. *Id*. Mr. Oglesby appealed, challenging (1) NARA's refusal to grant Oglesby a fee waiver; (2) the adequacy of the searches conducted by the Army, CIA, FBI, NSA, and State Department; (3) the adequacy of the *Vaughn* indices submitted by the Army, CIA, and NSA; and (4) the CIA's and Army's withholding of certain responsive documents. *Id*. at 1175. The D.C. Circuit agreed that the CIA and the Army failed to show that they conducted adequate searches, and that the CIA, Army, and NSA failed to adequately justify their withholdings. *Id*. The court affirmed the District Court in all other respects. *Id*. Upon remand, the Army, CIA, and NSA eventually filed a renewed motion for summary judgment. 9/25/97 Mot. for Summ. J., ECF No. [129]. Just short of one year later, Oglesby filed an opposition to the Defendants' motion and cross-moved for summary judgment. 9/14/98 Cross Mot., ECF No. [176].[3]

On October 8, 1998, President William Clinton signed into law the "Nazi War Crimes Disclosure Act," or "NWCDA." P.L. 105-246, 5 U.S.C. § 552 note. The act "required the U.S. Government to locate, declassify, and release in their entirety, with few exceptions, remaining classified records about war crimes committed by Nazi Germany and its allies." Nazi War Crimes & Japanese Imperial Gov't Records Interagency Working Group, Final Report to the United States Congress 1 (Apr. 2007), ECF No. [244-1] ("Final Report"). To oversee the implementation of NWCDA and the Japanese-Imperial Government Disclosure Act of 2000, the President created an Interagency Working Group ("IWG" or "the working group"), consisting of the Archivist of the United States, designated representatives of the FBI, the CIA, the National Security Council, the U.S. Holocaust Memorial Museum, and the Departments of Defense, Justice, and State, as well as

---

[3] Pleadings and orders submitted prior to 2006 are not on the electronic docket, but can be located in the case file maintained by the Clerk of Court.

three public members.  *Id.*  Although General Gehlen is not considered a Nazi war criminal, "the CIA pledged to acknowledge the intelligence relationship with General Gehlen in records processed for release under the [NWCDA]."  *Id.* at 48.  Accordingly, "the CIA approved the release of the 2,100-page Army Gehlen file, and in addition released nearly 2,100 pages of materials relating to Gehlen from its own files as well as files on many of Gehlen's personnel and agents— including the operational information in all of these files."  *Id.*

While the parties' cross-motions were pending, the Defendants submitted a declaration from William H. McNair, the Information Review Officer for the Directorate of Operations for the CIA, indicating that the Director of Central Intelligence declassified the relationship between the United States Government and the Gehlen Organization.  Decl. of William H. McNair, ECF No. [242-1], at ¶ 9.  In light of the declassification, the CIA indicated it needed to reprocess its previous releases to Oglesby and its referrals to the CIA from other agencies "because additional information may now be appropriate for release."  10/31/00 Status Report, ECF No. [211], at 3.  Unsure of what effect the declassification might have on the Defendants' motion for summary judgment with respect to the NSA and the Army, the Defendants withdrew the pending motion for summary judgment.  *Id.* at 6.  Oglesby noted that his cross-motion may also be moot due to the classification.  11/17/00 Order, ECF No. [214], at 2.  The Court accordingly ordered the Defendants to file a status report by no later than December 11, 2000, indicating "how much time is needed to complete its review of responsive material" and "how much time is needed to prepare and file a *Vaughn* declaration and accompanying motion for summary judgment."  *Id.*

Pursuant to the Court's November 2000 Order, the Defendants submitted a status report indicating that "recent CIA searches conducted in response to the portion of the plaintiff's FOIA request regarding General Gehlen have resulted in locating approximately 251 boxes of material,

and 2,901 folders, with documents that likely contain records regarding General Gehlen."[4] 12/11/00 Status Report, ECF No. [215], at 1-2.  The Defendants explained that "CIA reviewers processing documents for release under the NWCDA [would] be most familiar with the material at issue in plaintiff's FOIA request," therefore the CIA proposed "incorporat[ing] the processing of plaintiff's FOIA request into the processing of the documents to be reviewed pursuant to the NWCDA." *Id.* at 2.  The Defendants suggested this approach would benefit Mr. Oglesby because "the CIA [would] release responsive documents to the plaintiff as they [were] released under the NWCDA, instead of waiting until all documents are processed," as was the CIA's general procedure in FOIA cases. *Id.*  The Defendants estimated that the processing of all responsive documents under the NWCDA would be completed "within a year," but that "additional documents that go beyond the scope of the Act—which the CIA anticipates locating—will also need to be processed." *Id.*  Accordingly, the CIA requested two years in which to complete its review of documents and to file a *Vaughn* index. *Id.* at 3.  The parties discussed many of the issues raised in the Defendants' status report during a status hearing on January 9, 2001.  Noting that many of the documents were likely to be in German and thus need translating before processing, the Court asked the Defendants to submit a further status report in approximately three weeks. 1/9/01 Tr. 18:21-19:2.  The Court anticipated that the Defendants would file additional status reports as the documents were being processed, but advised Plaintiffs' counsel that if he was dissatisfied with the pace at which documents were reviewed or produced, he should contact the Court and request another status hearing. *Id.* 20:15-21.

---

[4]   During the status hearing on January 9, 2001, the Defendants estimated that the 251 boxes might contain between 251,000 and 775,000 pages of material.  1/9/01 Tr. 4:15-23.

In a further status report submitted on February 5, 2001, the Defendants explained that the CIA had identified "numerous code words associated with Gehlen and the Gehlen Organization, and conducted a search of the applicable records systems using these code words," identifying "a potential universe of over 25,000 responsive documents." 2/5/01 Status Report, ECF No. [216] at 2. The CIA intended to conduct another search "within the next two months" using additional search terms. *Id.* at 3-4. The agency estimated that the review of all potentially responsive documents, including referrals to other agencies as necessary, would take two years to complete, "but because of the many variables, the CIA suggest[ed] that it provide interim status reports on the CIA's Progress every four to six months." *Id.* at 4. The Court did not issue any orders in response to the February 2001 status report. In fact, between February 2001 and December 2011, neither party submitted any documentation to the Court, save notice of change of addresses for counsel and notices of substitution of counsel for the Defendants.

Nearly eleven years after the Defendants' last status report, the Plaintiffs filed a motion to substitute Ms. DiBacco and Ms. Webster as Plaintiffs, which Judge James E. Boasberg granted in his capacity as the motions Judge. 12/1/11 Mot., ECF No. [224]; 1/5/12 Minute Order. The Plaintiffs then moved to compel the Defendants to, among other things, describe the searches conducted for potentially responsive documents, provide copies of all draft status reports created after February 2001, provide copies of all *Vaughn* indices submitted to the Plaintiffs since February 2001, "[l]ist and provide copies of all correspondence which was sent to Carl Oglesby or his attorney regarding this case subsequent to the February 5, 2001 status report," and "[l]ist and provide copies of all records released pursuant to this lawsuit subsequent to the February 5, 2001 status report." Pls.' Mot. to Compel, ECF No. [227]. Once the Plaintiffs' motion was fully briefed, the case was randomly reassigned to the undersigned. 5/30/12 Reassignment of Civil Case, ECF

No. [237].  The Court promptly denied the Plaintiffs' motion to compel, and ordered the parties to submit a proposed briefing schedule for dispositive motions.  5/30/12 Minute Order.

The parties then filed and briefed new cross motions for summary judgment.  On September 26, 2013, the Court granted Defendants' [240] Renewed Motion for Summary Judgment and denied Plaintiffs' [241] Cross-Motion for Summary Judgment.  9/26/2013 Order, ECF No. [256].  The Court held that Defendants had met their burden of showing, through detailed declarations and *Vaughn* indices, that the CIA and the Army conducted adequate searches for responsive records, and that the NSA, the CIA, and the Army properly withheld certain information pursuant to various FOIA exemptions.  9/26/2013 Mem. Op., ECF No. [257], at 2.

Plaintiffs appealed this Court's decision, and the Court of Appeals affirmed.  *DiBacco v. U.S. Army*, 795 F.3d 178 (D.C. Cir. 2015).  The Court of Appeals agreed that the Army had conducted an adequate search for responsive records.  *Id.* at 188-92.  It also rejected Plaintiffs' argument that summary judgment was not proper because the Army had transferred responsive documents to NARA, finding that the Army had transferred those documents in order "to fulfill the Army's obligations under the Disclosure Act," not to evade its FOIA obligations.  *Id.* at 192. The Court of Appeals also found that the CIA had conducted an adequate search for records under FOIA, *id.* at 195, and had satisfied its burden of showing that it had properly withheld certain information pursuant to FOIA Exemptions 1 and 3, *id.* at 195-99.

However, the Court of Appeals remanded the case back to this Court "to address in the first instance DiBacco's and Webster's challenges to redactions in a batch of records that the Army disclosed to them while this appeal was pending."  *Id.* at 183.  At oral argument, Plaintiffs argued that the Army's transfer of its records to NARA deprived Plaintiffs of the benefit of the Army's fee waiver for their FOIA requests.  Defs.' Stmt. of Material Facts as to Which There is No

Genuine Issue, ECF No. [327] ("Defs.' Stmt.") at ¶ 10; Pls.' Resp. to Defs.' Stmt. of Material Facts

Not in Genuine Dispute, ECF No. [332] ("Pls.' Resp.") at ¶ 10.   The Court of Appeals asked

Plaintiffs' counsel to identify any NARA documents the contents of which counsel did not know.

Defs.' Stmt. ¶ 13; Pls.' Resp. to Defs.' Stmt. ¶ 13.   Plaintiffs' counsel identified documents

referenced in paragraph 17 of a declaration from NARA's Chief of Special Access and Freedom

of Information Act Branch, Research Services, Martha Wagner Murphy.   *Id.*   Defendants

represented to the Court of Appeals that arrangements would be made to provide to Plaintiffs a

copy of those documents.   Defs.' Stmt. ¶ 15; Pls.' Resp. to Defs.' Stmt. ¶ 15.   A copy of those

documents was eventually provided, but the Court of Appeals noted in its Opinion that some of

the documents "were redacted or indicated that pages had been removed, with no accompanying

justification for that withholding of information." *DiBacco*, 795 F.3d at 194.   The Court of Appeals

"accordingly remand[ed] to allow the parties to create a record and the district court to decide in

the first instance the narrow question of whether those withholdings were permissible under

FOIA." *Id.*   The Court of Appeals expressed that the "remand is limited to issues arising from the

Army's release to DiBacco during the appeal of responsive but redacted Army documents that had

been held by the National Archives." *Id.* at 200.

There are a total of 2,863 pages of digitized records discussed in paragraph 17 of Ms.

Murphy's declaration.   Defs.' Stmt. ¶ 26; Pls.' Resp. to Defs.' Stmt. ¶ 26.   Of those 2,863,

Defendants had originally made redactions to 11 pages pursuant to FOIA Exemptions 1 and 3.

Defs.' Stmt. ¶¶ 25, 28; Pls.' Resp. to Defs.' Stmt. ¶¶ 25, 28.   Those redactions were initially

addressed and explained in a 2012 declaration of then-CIA Information Review Officer Martha

M. Lutz.   Defs.' Stmt. ¶ 27; Pls.' Resp. to Defs.' Stmt. ¶ 27.   After the case was remanded by the

Court of Appeals, Mary E. Wilson, Acting Information Review Officer at the CIA, conducted a

new classification review of these records.  Defs.' Stmt. ¶ 29; Pls.' Resp. to Defs.' Stmt. ¶ 29.

She concluded that certain redactions could be removed at that time.  Defs.' Stmt. ¶ 32; Pls.'

Resp. to Defs.' Stmt. ¶ 32.  Now only 10 pages contain redactions.  Defs.' Stmt. ¶ 33; Pls.' Resp.

to Defs.' Stmt. ¶ 33.

Following the Court of Appeals' remand, on October 21, 2015, the Court ordered the

parties to meet and confer and to file a joint status report regarding how they proposed proceeding

in this matter.  10/21/2015 Order, ECF No. [277].  The parties did so, and subsequently filed and

briefed a new round of cross-motions for summary judgment.  Those cross-motions are now fully

briefed and ripe for resolution.

## II.  LEGAL STANDARD

Congress enacted the Freedom of Information Act, 5 U.S.C. § 552, in order to "pierce the

veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Dep't of

Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted).  Congress remained sensitive to

the need to achieve balance between these objectives and the potential that "legitimate

governmental and private interests could be harmed by release of certain types of information."

*Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992)

(en banc) (citation omitted), *cert. denied*, 507 U.S. 984 (1993).  To that end, FOIA "requires federal

agencies to make Government records available to the public, subject to nine exemptions for

categories of material."  *Milner v. Dep't of Navy*, 131 S.Ct. 1259, 1261-62 (2011).  Ultimately,

"disclosure, not secrecy, is the dominant objective of the act."  *Rose*, 425 U.S. at 361.  For this

reason, the "exemptions are explicitly made exclusive, and must be narrowly construed."  *Milner*,

131 S.Ct. at 1262 (citations omitted).

When presented with a motion for summary judgment in this context, the district court must conduct a "de novo" review of the record, which requires the court to "ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure under the FOIA." *Multi Ag. Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted). The burden is on the agency to justify its response to the plaintiff's request. 5 U.S.C. § 552(a)(4)(B). "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Multi Ag Media*, 515 F.3d at 1227 (citation omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted). Summary judgment is proper when the pleadings, the discovery materials on file, and any affidavits or declarations "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). With these principles in mind, the Court turns to the merits of the parties' cross-motions for summary judgment.

# III.  DISCUSSION

The parties' cross-motions for summary judgment cover two main areas of dispute: (A) whether the Army has conducted an adequate search for records and (B) whether the redactions Defendants made to the Army records released to Plaintiffs during the course of the latest appeal were proper under FOIA Exemptions 1 and 3.  Defendants are entitled to summary judgment on both issues.  The Court will address each in turn, and then (C) conclude by addressing certain miscellaneous points raised in the parties' briefs.

## A.  Adequacy of the Army's Search for Records

Plaintiffs argue that the records released during the latest appeal show that the Army—in conjunction with NARA—has not conducted an adequate search for records responsive to Oglesby's FOIA requests.[5]  "In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby I*, 920 F.2d at 68.  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."  *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original).  "In determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness."  *Riccardi v. United States Dep't of Justice*, 32 F. Supp. 3d 59, 63 (D.D.C. 2014).

Defendants are entitled to summary judgment on this issue.  This Court has already analyzed the more-than-reasonable search for records undertaken by the Army, in conjunction with

---

[5] NARA is no longer a defendant in this case, but the Army has transferred its records that would be responsive to Plaintiffs' FOIA requests to NARA, who has accepted full responsibility for them and "conducted the most recent searches of those files for records responsive to Oglesby's FOIA request."  *DiBacco*, 795 F.3d at 189-90.

NARA, and determined that it was adequate for the purposes of FOIA.  *DiBacco*, 983 F. Supp. 2d at 62-64.  That decision was upheld by the Court of Appeals.  *DiBacco*, 795 F.3d at 188-92.  The Court will not repeat that analysis here, although it incorporates it by reference into this Memorandum Opinion.  It is sufficient for the purposes of the pending cross-motions for summary judgment to state that nothing in the records produced to Plaintiffs during the course of the latest appeal of this case undermines the Court's previous conclusions with respect to the adequacy of those searches.[6]

First, the Court rejects Plaintiffs' contention that the presence of "Top Secret Replacement Sheets" in the recently-provided Army records shows that Defendants have not conducted an adequate search.  These "Replacement Sheets" indicate that certain "Top Secret" documents were removed from the records Defendants were able to locate in the immediate aftermath of World War II, *roughly 70 years ago*.  Decl. of Joanne Benear, ECF No. [327-1] ("Benear Decl."), at ¶¶ 11-12.  These records were microfilmed at the Army's Counter Intelligence Corps in Europe at that time.  *Id.*  Defendants now avow that, regardless of what Plaintiffs refer to as the "plethora of information" on these sheets, Pls.' Mot. at 37, Defendants do not know where these documents might have been taken or stored so many years ago, or where, so many years later, they could even begin looking for them beyond the locations they have already searched.  Benear Decl. at ¶ 14.  The Court finds this claim reasonable.  Although "there may be times when an agency's inability to retrieve documents known or thought to be in

---

[6] The Court notes that, as part of their argument that the Army has not conducted adequate searches, Plaintiffs request the Court "consider using its discretion to conduct *in camera* review of a selected sample of the records that remain withheld" and "appoint a Special Master."  Pls.' Mot. at 42-43; *see also* Pls.' Reply at 15.  Because the Court herein rejects Plaintiffs' attempts to challenge the adequacy of the Army's searches, and reaffirms its finding that adequate searches have been conducted, the Court will take neither of these steps.

its files is inherently unbelievable," *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983), given the considerable amount of years that have passed since these documents were microfilmed, this is not one of those times.

Regardless of whether Defendants can say definitively what particular documents were replaced by these "Replacement Sheets," whether those documents still exist, or where those documents are, the relevant question remains, as in all FOIA cases, merely whether the Army has conducted an adequate search for responsive documents.  As the Court of Appeals has concluded, "[t]he declarations from the Army and the National Archives describe searches of Army records reasonably calculated to discover all documents responsive to Oglesby's request," and, in fact, "[t]hose searches have looked further and wider than FOIA requires."  *DiBacco*, 795 F.3d at 191.  Accordingly, if the documents replaced by these "Replacement Sheets" still exist, and if they are in fact responsive to Oglesby's FOIA requests, the Army presumably would have found them in its searches, which it has declared covered all "locations that might contain responsive records."  *DiBacco*, 795 F.3d at 190.  This is all FOIA requires of the Army.[7]

Second, Plaintiffs argue that the production of the 2,863 pages at issue here indicates an inadequate search because "[t]here were 9,000 Army records that were produced before year 2000."  Pls.' Mot. at 41-42.  Plaintiffs argue that "the Army and NARA need to account for why these records have not been given to DiBacco as part of the NWCDA release."  *Id.* at 42. Defendants have, however, accounted for this perceived discrepancy.  The reason why Plaintiffs

---

[7] To the extent Plaintiffs contend Defendants have any additional duty to produce these documents simply because they were referenced in the records produced to Plaintiffs, they are wrong.  "[O]ur Court of Appeals has made clear that agencies do not need to examine every crossreferenced document uncovered after an initial disclosure."  *Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.*, 117 F. Supp. 3d 46, 58 (D.D.C. 2015).

were only provided 2,863 pages in this latest production is because the files referenced in paragraph 17 of Martha Wagner Murphy's declaration, which were the records provided to Plaintiffs during the latest appeal and the only records at issue here, consisted only of *digitized* files.  Defs.' Stmt. ¶ 22; Decl. of Martha Wagner Murphy, ECF No. [240-2] ("Murphy Decl."), at ¶¶ 12-17.  Digitized files constituted only a small portion of the overall universe of Army records that were transferred to NARA, Final Report at 52-54, and the 9,000 records referenced by Plaintiffs apparently were not limited to digitized files.   Accordingly, the discrepancy highlighted by Plaintiffs has been explained, is justified, and is not a reason to deny summary judgment.

Third, Plaintiffs argue that the Army needs to run additional searches because "[t]he Government has conceded that Army had a copy, indeed multiple copies" of records that it transferred to NARA.  Pls.' Mot. at 42.  This is also not a reason to deny summary judgment on the search issue.  Apparently the Army did keep a *copy* of the documents it had selected as responsive to Plaintiffs' FOIA requests at a much earlier stage in this litigation, before transferring all of its *original* Investigative Records Repository ("IRR") records to NARA. Defs.' Stmt. ¶¶ 17-18; Pls.' Ex. 5, ECF No. [330-5] (December 19, 2014 Letter from Ronald C. Machen Jr. to Mark J. Langer); Benear Decl. ¶¶ 5-6 .  But this fact is of no help to Plaintiffs.  If all that the Army has maintained is a copy of the set of documents it already located and determined were responsive to Oglesby's requests, there are no additional original documents for the Army to search.

Finally, Plaintiffs raise a number of challenges that do not appear to relate in any way to the release of redacted Army records during the latest appeal, and are accordingly outside of the scope of the remand in this case.  Plaintiffs argue that Defendants should have searched certain

"dossiers" listed in a book written by Linda Hunt, that NARA has not searched for certain project files or archival materials stored in Arlington, Virginia, and that "it is unclear whether the CIA has ever accounted for" certain materials the FBI referred to the CIA "when the FBI was still active in this case." Pls.' Mot. at 38. The Court need not resolve these arguments. The Court of Appeals' mandate to this Court stated that "[t]he remand is limited to the issues arising from the Army's release to DiBacco during the appeal of responsive but redacted Army documents that had been held by the National Archives." Mandate, ECF No. [275]. Because these miscellaneous arguments regarding the adequacy of various Defendants' searches are not within this mandate, they are not properly before the Court.[8]

Accordingly, having found that none of Plaintiffs' arguments regarding the adequacy of the Army's search—in conjunction with NARA—have merit, the Court grants Defendants summary judgment on this issue.

---

[8] In a letter to the Court of Appeals during the latest appeal, Plaintiffs raised a number of additional miscellaneous deficiencies they perceived with the copy of digitized Army records they had received. Ex. A to Defs.' Response to the Court's Order of November 20, 2015, ECF No. [296-1] (April 8, 2015 Letter from James H. Lesar to Mark J. Langer). It is unclear whether Plaintiffs continue to press those arguments in their cross-motion for summary judgment, but the Court notes that they would similarly not be grounds for denying Defendants' motion for summary judgment. Defendants have provided uncontested explanations for these perceived problems. For example, the backside of certain documents appear to not have been microfilmed due to an error of the microfilmer long before the passage of the FOIA, Benear Decl. ¶ 15, and what appeared to Plaintiffs to be redactions on certain documents were in fact the effect of staples being photocopied, *id.* ¶ 9. These minor and explainable issues regarding the quality of documents microfilmed long ago clearly has no effect on the adequacy of Defendants' search, or any other legal issue in this case. Additionally, Plaintiffs at times throughout this and prior briefing have suggested that certain "dossiers" show that there is responsive material that has not been provided to them, but Plaintiffs present no adequate explanation of, or support for, this assertion, which the Court accordingly rejects.

**B.  Redactions on Army Records Produced During Appeal**

The records released to Plaintiffs after the oral argument before the Court of Appeals in 2014 include 2,863 pages.  Defs.' Stmt. ¶ 26; Murphy Decl. ¶ 17.  Of those 2,863, redactions now appear on the face of 10 pages.  Defs.' Stmt. ¶ 33; Pls.' Resp. to Defs.' Stmt. ¶ 33.  The redactions have been made at the request of the CIA, and are made pursuant to FOIA Exemptions 1 and 3.  *See generally* Decl. of Mary E. Wilson, ECF No. [296-4] ("Wilson Decl.").  Most of the redactions are very minimal.  *See* Wilson Decl., Ex. A.  Despite the minimal nature of these redactions, however, Plaintiffs contend that the FOIA exemptions have been misapplied and that summary judgment for Defendants is still not warranted.  The Court considers Defendants' showing and Plaintiffs' arguments with respect to each exemption in turn.

**1.  Exemption 1**

Several redactions to the 10 pages still at issue have been justified by Defendants, in part, as properly withheld under FOIA Exemption 1.  Exemption 1 provides that agencies may withhold records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  The parties apparently agree that the relevant Executive Order for the purposes of Defendants' current Exemption 1 withholdings is Executive Order 13526.  Pls.' Mot. at 19; Defs.' Mot. at 26.  Executive Order 13526 "sets forth both substantive and procedural criteria for classification."  *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013).  Plaintiffs contend that Defendants have failed to satisfy their burden of showing that the redacted information is properly classified under either the Order's substantive or its procedural criteria.  Pls.' Mot. at 19.

### a.   Whether The Withheld Information Is Properly Classified Substantively

First, the Court rejects Plaintiffs' various attempts to undermine Defendants' showing that the documents were properly classified under Executive Order 13526's substantive criteria. That criteria requires that classified information pertain to at least one of the Executive Order's subject-matter classification categories and that "disclosure of that information [ ] reasonably be expected to cause some degree of harm to national security." *Judicial Watch*, 715 F.3d at 941.

Defendants have provided the declaration of Mary E. Wilson to carry their burden of showing that the withheld information was properly classified.  Wilson Decl.  Ms. Wilson states that she is the Acting Information Review Officer for the Litigation Information Review Office at the CIA.  *Id.* ¶ 1.  In that role, Ms. Wilson holds original classification authority.  *Id.* ¶ 3.

Ms. Wilson states that she has reviewed the documents and "determined that some of the information contained in the documents at issue is currently and properly classified."  *Id.* ¶ 9. Attached to Ms. Wilson's declaration is a copy of each document with labels indicating what portions of the document are classified.  *Id.*, Ex. A.  Ms. Wilson states that the information that remains redacted falls within Executive Order 13526's classification categories, including "intelligence activities . . . intelligence sources or methods, or cryptology," or "foreign relations or foreign activities of the United States." *Id.* ¶ 14.  Ms. Wilson also states that the "unauthorized disclosure of the information "would reasonably be expected to result in serious damage to the U.S. national security." *Id.*  Specifically, Ms. Wilson explains that the withheld information "pertains to specific CIA intelligence methods still in use, including cover mechanisms; information regarding foreign liaison relationships; and cities and countries in which CIA maintained covert CIA installations," and that the release of such information would result in the harm described in the previous declaration of Martha M. Lutz.  *Id.* ¶ 15.  In a

declaration filed earlier in this litigation, Ms. Lutz, the then-Chief of the Litigation Support Unit of the CIA, explained in detail the harm that results from disclosure of such classified CIA information.  Decl. of Martha M. Lutz, ECF No. [240-5] ("Lutz Decl.").  Ms. Lutz explained that revealing intelligence sources, even years later, makes it more difficult for the United States to create and maintain confidential intelligence relationships.  *Id.* ¶¶ 36-40.  Revealing intelligence methods or the information produced by those methods reduces their effectiveness and allows hostile entities to penetrate, detect, prevent, damage or otherwise neutralize United States intelligence operations.  *Id.* ¶¶ 41-52.  The Court is satisfied by this articulation of potential harm from disclosure.  *See Am. Civil Liberties*, 628 F.3d at 626 (approving of similar explanations of harm from the release of CIA information in support of Exemption 1 claim).

Accordingly, based on the explanation provided by Ms. Wilson and Ms. Lutz, the general nature of the records at issue, and the non-redacted context in those records, and bearing in mind that "in the context of national security concerns, courts must accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record," *Wolf v. C.I.A.*, 473 F.3d 370, 374 (D.C. Cir. 2007) (internal quotations omitted), the Court finds that Defendants have satisfied their burden of showing that the minimal amount of withheld information is properly classified under Executive Order 13526's substantive criteria.

None of Plaintiffs' numerous arguments on this point changes the Court's conclusion. First, Plaintiffs contend that Defendants have not provided enough "context" or information about the documents for Plaintiffs to be able to assess whether the withheld information warrants classification.  For example, Plaintiffs fault the Wilson declaration for not indicating whether the redacted intelligence mechanisms are known to foreign governments, whether installations are known to the countries in which they are installed, and whether human intelligence sources are

still alive.  Pls.' Mot. at 31.  Plaintiffs also fault the Wilson declaration for not providing the

topics discussed at a certain meeting, the minutes of which are mostly redacted from one of the

recently-provided Army documents.  *Id.* at 28.  The Court accepts that some of this information

could be relevant in a *Vaughn* index relating to classified CIA information, but the Court is not

persuaded that Ms. Wilson's failure to include all of this information renders her declaration

insufficient.  "If an agency's statements supporting exemption contain reasonable specificity of

detail as to demonstrate that the withheld information logically falls within the claimed

exemption and evidence in the record does not suggest otherwise . . . the court should not

conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate

whether the court agrees with the agency's opinions."  *Larson v. Dep't of State*, 565 F.3d 857,

865 (D.C. Cir. 2009).  As discussed above, Defendants have provided declarations that

adequately explain why the withheld information is properly classified under Executive Order

13526, and therefore exempt under Exemption 1.  None of the information Plaintiffs fault

Defendant for not providing was required to accomplish this, and accordingly the absence of this

information does not preclude summary judgment for Defendants.

Second, Plaintiffs argue that by releasing additional information after the most recent

review of the records at issue conducted by Ms. Wilson, Defendants have implicitly undermined

the redactions originally made by Ms. Lutz.  Pls.' Mot. at 25.  Plaintiffs argue that the "clear

implication" is that another round of review would result in the disclosure of even more

information.  *Id.*  This argument is baseless and ignores the reasonable explanation for the further

release of information Defendants have already provided.  Ms. Wilson explained that these

further releases were the result of the fact that at the time the former CIA Information Review

Officer, Ms. Lutz, had conducted her review of the documents, Executive Order 13526's 50-year

mandatory declassification provision had not yet come into effect.  Defs.' Stmt. ¶ 30; Pls.' Resp.

to Defs.' Stmt. ¶ 30.  That provision *had* come into effect by the time Ms. Wilson conducted her

review.  Defs.' Stmt. ¶ 31; Pls.' Resp. to Defs.' Stmt. ¶ 31.  It was for this reason that more

information could be released after Ms. Wilson's review.  This in no way indicates that another

review would result in the disclosure of even more information.  Plaintiffs cast no serious doubt

on this explanation, which the Court accepts as accurate.  *See Hodge v. F.B.I.*, 703 F.3d 575, 582

(D.C. Cir. 2013) (rejecting plaintiff's argument that the fact that "documents contained fewer

redactions when released to [plaintiff] a second time . . . demonstrates that the FBI is improperly

withholding material").

      Third, Plaintiffs argue that the credibility of Ms. Wilson's classification of the records at

issue as "Secret" is undermined by "the fact that she claims that the information is so super-

damaging to national security that it qualifies for exemption from automatic declassification."

Pls.' Mot. at 26.   In other words, Plaintiffs contend that information being classified as "Secret"

is inconsistent with that same information being exempted from automatic declassification after

50 years under Executive Order 13526.  *Id.*  Again, this argument is misguided.  Plaintiffs point

to no basis in Executive Order 13526 for the argument that the CIA may not propose to exempt

from automatic declassification information that is only classified as "Secret."  Executive Order

13526 merely states that "[i]n extraordinary cases, agency heads may, within 5 years of the onset

of automatic declassification, propose to exempt additional specific information from

declassification at 50 years," so long as the agency head or other senior agency official notifies

the Director of the Information Security Oversight Office of such a proposal, and it is approved.

E.O. 13526 §§ 3.3(h)(2), 3.3(j).  Here, the Director of the CIA proposed to exempt additional

information in a "CIA Declassification Guide" dated September 26, 2012.  Wilson Decl. ¶ 16.

The Guide specifically called for the exemption of information that "could reveal: a relationship or a former relationship with an intelligence or security service of a foreign government or international organization, a nonhuman intelligence source in active use, or an intelligence method in active use." *Id.* ¶ 17.  The Guide was approved through an appeals process provided for in Executive Order 13526.  Ms. Wilson states that the withheld information—which relates to CIA foreign liaison relationships and cities and countries in which the CIA maintained covert installations—is exempt from automatic disclosure pursuant to these approved categories of exemption.  *Id.* ¶ 20.  Accordingly, Defendants have sufficiently shown that the redacted information continues to be properly classified despite the automatic disclosure requirements of Executive Order 13526, and the fact that it is classified as "Secret" is irrelevant to this analysis.

Fourth, Plaintiffs argue that if the redacted information was indeed exempted from automatic declassification under Executive Order 13526, section 3.3(j)(1) of that Order required that "an agency head or senior agency official [ ] notify the Director of the Information Security Oversight Office . . . of any specific information that the agency proposes to exempt."  Pls.' Mot. at 27.  That notification was required to include a detailed description of the proposed-exempt information, an explanation of why it should be exempt, and a specific date or event upon which the agency proposes automatic declassification eventually to occur.  E.O. 13526 § 3.3(j)(1).  Plaintiffs argue that Ms. Wilson's declaration does not provide all of this information.  *Id.* Plaintiffs' argument misses the point of section 3.3(j)(1).  This section requires the agency head or other senior agency official to provide the listed information *to the Director of the Information Security Oversight Office* as part of the notification process for proposals of additional categories of information to exempt from automatic disclosure after 50 years.  It does not require that this information be given to *Plaintiffs* or any other individuals who request the exempted documents.

Defendants were, of course, required to provide Plaintiffs and the Court with a reasonably detailed explanation of why the redacted information was properly classified and therefore withheld, *Am. Civil Liberties*, 628 F.3d at 619, but that does not require Ms. Wilson to include in her declaration all of the information the CIA provided to the Director as part of its proposal to exempt information under section 3.3(j). Ms. Wilson states, and Plaintiffs do not meaningfully rebut, that such a proposal was made, and that it was eventually approved. This is sufficient.

Fifth, Plaintiffs contend that "if the withheld material is of such super-importance that its withholding must be prolonged beyond even the current 56 years, then one is surprised that the amount of material withheld is so minimal. This is inconsistent with what one would expect." Pls.' Mot. at 29. Little need be said about this argument. The fact that only minimal redactions have been made to the records is completely irrelevant to the question of whether the information redacted is properly classified under Executive Order 13526. "Minimal" amounts of information can, of course, be significant and properly classified. As Plaintiffs themselves point out, the redactions in this case "are 'minimal' in terms of size, but not in terms of significance." Pls.' Mot. at 28 n.13. If anything, the minimal nature of the redactions evinces a careful, discriminating review and suggests that Defendants took seriously their obligation to release non-exempt and reasonably segregable portions of documents.

Having rejected all of Plaintiffs' arguments on these points, the Court concludes that Defendants have satisfied their burden of showing that the redacted material is properly classified under the substantive criteria of Executive Order 13526.

### b.   Whether The Withheld Information Is Properly Classified Procedurally

Plaintiffs also claim that Defendants failed to show that the redacted information was classified according to the procedural requirements of Executive Order 13526. Pls.' Mot. at 19.

In addition to satisfying an Executive Order's substantive criteria, "[t]o be classified properly, a document must be classified in accordance with the procedural criteria of the governing Executive Order." *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 483 (D.C. Cir. 1980). Plaintiffs argue that the information here was not properly classified under the procedural requirements of Executive Order 13526 because the redacted documents "do not show any of the classification markings that should have been applied as a result of a review under either E.O. 12958 or E.O. 13526." Pls.' Mot. at 19.

Although more substantial than Plaintiffs' arguments regarding Executive Order 13526's substantive criteria, this argument also fails. Defendants appear to concede that certain classification markings are missing on these documents, Defs.' Mot. at 31, but claim that, under the circumstances, these procedural errors do not prevent Defendants from claiming protection under Exemption 1. The Court agrees. As an initial matter, the first sentence of section 1.6(f) of Executive Order 13526 expressly states that "[i]nformation assigned a level of classification under this or predecessor orders shall be considered as classified at that level of classification *despite the omission of other required markings*." E.O. 13526 § 1.6(f) (emphasis added). As has been described earlier in this litigation, the records at issue in this case were classified many years ago pursuant to past Executive Orders. According to the plain language of Executive Order 13526 then, the omission of markings on these documents that would be required under the present Executive Order is not controlling.[9]

---

[9] This conclusion is not affected by the second sentence of section 1.6(f), which reads that "[w]henever such information is used in the derivative classification process or is reviewed for possible declassification, holders of such information shall coordinate with an appropriate classification authority for the application omitted markings." E.O. 13526 § 1.6(f). Plaintiffs argue that because Ms. Wilson does not state that any such coordination or retroactive application of omitted markings has occurred, the lack of markings renders the classification of

Moreover, to the extent Plaintiffs argue that certain unspecified markings required under *past* Executive Orders are missing, the Court finds that such procedural error would not undermine Defendants' classification decision so as to preclude reliance on Exemption 1. Plaintiffs argue that the Court cannot excuse any absence of markings because "interpreting Exemption 1 according to the plain meaning of the statute requires that an agency meet its burden under Exemption 1(A) and 1(B) separately." Pls.' Mot. at 21. By this Plaintiffs appear to mean that to excuse *any* procedural errors in the classification of records would be to ignore part (B) of Exemption 1, which requires that information withheld have been "in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The Court disagrees that any procedural error nullifies the classification of information for the purposes of claiming protection under Exemption 1. As the D.C. Circuit has recognized, "the consequences of particular violations may vary . . . [f]or procedural violations, some may be of such importance to reflect adversely on the agency's overall classification decision, requiring a remand to the district court for in camera inspection; while others may be insignificant, undermining not at all the agency's classification decision." *Lesar*, 636 F.2d at 485. In *Judicial Watch, Inc. v. U.S. Dep't of Def.*, the D.C. Circuit determined that the absence of required markings on classified documents did not prevent the court from finding that said documents were properly classified, and accordingly withheld under Exemption 1, where the documents fit within the substantive standards of the Executive Order and "a person with original classification authority has approved the classification decision." *Judicial*

---

the documents ineffective. Defendants argue that, to the contrary, the second sentence of section 1.6(f) is merely a "procedural requirement for correcting an error in marking classified information." Defs.' Mot. at 32. Defendants have the better argument. The Court does not interpret the second sentence of section 1.6(f) as providing that failure to coordinate and correct the errors undermines the classification of the information, which the first sentence of the Order states is effective despite omitted markings.

*Watch*, 715 F.3d at 944.  In such a situation, the D.C. Circuit concluded that the alleged procedural

error "would not 'reflect adversely on the agency's overall classification decision.'"  *Id.* (quoting

*Lesar,* 636 F. 2d at 484, 485).[10]

Here, as discussed above, the Court has found that the redacted information fits within the

substantive criteria of Executive Order 13526.  The original classification process appears to have

occurred decades ago and, to the extent certain markings were not applied correctly at that time,

Ms. Wilson—who has original classification authority—has now stated that she has reviewed the

information and determined that it is properly classified at the "Secret" level under Executive

Order 13526 as of today.  Wilson Decl. ¶ 9.  In this situation, the Court is not persuaded that any

markings Plaintiffs claim have been omitted reflect adversely on the agency's classification

decision such that the Court should find that the redacted information was improperly withheld.

*See Canning v. United States Dep't of State*, 134 F. Supp. 3d 490, 503 (D.D.C. 2015) ("In light of

the Hackett declarations, which confirm that the withheld documents are properly classified

pursuant to EO 13526, the Court is not persuaded that the absence of unspecified markings would

affect the application of Exemption 1 to those documents."); *Bigwood v. United States Dep't of

Def.*, 132 F. Supp. 3d 124, 151 (D.D.C. 2015) ("as long as the agency assures the Court that a

person with original classification authority has approved the classification decision, the agency's

---

[10] Plaintiffs do not seriously engage with this case law, opting instead to block quote large portions of the dissenting opinion from a 1978 case, *Goland v. Cent. Intelligence Agency*, 607 F.2d 339 (D.C. Cir. 1978).  Defendants contend that, even if the quoted language from the dissent in *Goland* were binding law, Plaintiffs' reliance on that language is misplaced because that opinion addressed a different type of procedural error than is at issue here.  Defs.' Reply at 5.  It is sufficient for the Court to say that the quoted portion of *Goland* is from a dissenting opinion which predates *Lesar* and *Judicial Watch*, which are binding D.C. Circuit case law on this subject.  Accordingly, to the extent *Lesar* and *Judicial Watch* are inconsistent with the *Goland* dissent, the Court's analysis has been guided by the former opinions.

failure to comply with Section 1.6 of E.O. 13,526 should not 'reflect adversely on the agency's overall classification decision.'") (quoting *Judicial Watch*, 715 F.3d at 944).[11]

In sum, Ms. Wilson's declaration—incorporating in part Ms. Lutz's prior declaration—establishes with a reasonable level of specificity that the information at issue was properly classified under Executive Order 13526, and thus was properly withheld under FOIA Exemption 1. Defendants are entitled to summary judgment on this issue.

## 2. Exemption 3

Even if the redactions had not been properly made pursuant to Exemption 1, summary judgment for Defendants would nevertheless be appropriate because Defendants have satisfied their burden of showing that all redactions at issue were also proper under FOIA Exemption 3. Exemption 3 permits an agency to withhold information "specifically exempted from disclosure by statute (other than section 552b of this title)," if the relevant statute

> (A)      (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
>
> > (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
>
> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

*Id.* § 552(b)(3).  "When analyzing whether the defendant is entitled to invoke Exemption 3, the court need not examine 'the detailed factual contents of specific documents' withheld; rather, 'the

---

[11] To the extent Plaintiffs also argue that the information was not properly classified procedurally because the CIA did not follow the procedures to exempt the information from automatic disclosure after 50 years, this argument mirrors Plaintiffs' arguments regarding Executive Order 13526's substantive criteria and has already been addressed above.  Ms. Wilson has explained in reasonable detail that the CIA did in fact seek and receive permission to exempt additional categories of information from automatic disclosure after 50 years, and the redacted information falls within those additional categories.

sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.'" *James Madison Project v. C.I.A.*, 605 F. Supp. 2d 99, 113-14 (D.D.C. 2009) (quoting *Morley v. C.I.A.*, 508 F.3d 1108, 1126 (D.C. Cir. 2007)).   Here, the CIA argues that it properly withheld certain information as provided by the National Security Act of 1947, as amended, 50 U.S.C. § 3024(i)(1), and the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507 ("CIA Act").   The National Security Act provides that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure."   50 U.S.C. § 3024(i)(1).   The relevant provision of the CIA Act provides that the CIA shall be exempt from disclosing "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency."   50 U.S.C. § 3507.   Both the National Security Act and the CIA Act qualify as Exemption 3 statutes.   *See Subh v. C.I.A.*, 760 F. Supp. 2d 66, 70 (D.D.C. 2011) (collecting cases).

Ms. Wilson states that she has reviewed the withheld information and determined that it is exempt from disclosure under these statutes.   Wilson Decl. ¶ 21.   Ms. Wilson explains that the information that has been redacted from the documents at issue include "the names of CIA employees; information regarding CIA intelligence methods; information regarding covert CIA installations, including names and locations of these covert installations; signatures of CIA employees; and internal CIA organizational information."   *Id.* ¶ 27.   The Court has reviewed the redacted documents and, based on the context provided by the non-redacted portions and the general nature of the documents, is persuaded that Ms. Wilson's assertions are true and accurate. The Court notes in particular that it is apparent that the majority of redactions cover only names or signatures.   Based on its own review and Ms. Wilson's declaration, and especially considering "the special deference owed to agency affidavits on national security matters," *Morley,* 508 F.3d

at 1126, the Court concludes that Defendants have carried their burden of showing that Exemption

3 exempts the redacted information from disclosure because it falls within the purview of either

the National Security Act or the CIA Act.

Plaintiffs make a number of arguments in an attempt to discredit Defendants' Exemption

3 claims, but none have merit.  First, with respect to the National Security Act, Plaintiffs argue

that the Court should have "considerable skepticism" about these claims of exemption because it

is "well-established that both the KGB and MI-6 had thoroughly infiltrated the Gehlen

Organization."  Pls.' Mot. at 35.  Plaintiffs apparently suggest that the CIA is merely attempting

to keep the redacted information secret to protect itself from the embarrassment that would ensue

if this infiltration became public.  *Id.*  As support, Plaintiffs point to portions of the IWG Final

Report which criticized the CIA for not being forthcoming with Congress with regard to CIA

activity after World War II.  *Id.*

This vague assertion of "skepticism," Pls.' Mot. at 36, regarding Defendants' Exemption

3 claims is far from sufficient grounds upon which to deny Defendants summary judgment.  The

mere fact that the Final Report claims that the CIA had acted uncooperatively in the past is clearly

insufficient to create a genuine issue of fact as to the CIA's statements regarding withholdings in

this case.  Moreover, Plaintiffs present an incomplete and misleading depiction of the Final Report.

The only portions of the Final Report cited by Plaintiffs that discuss CIA conduct with any

significant degree of disapproval concern the CIA's cooperation with Congress in the 1980s and

1990s.  Final Report at 18.  The Final Report, which was published in 2007, goes on to conclude

that "[u]ltimately, the IWG convinced the CIA to be forthcoming to an unprecedented extent in

releasing information."  *Id.* at 45.  Accordingly, even if the Court were to read as much into the

Final Report as Plaintiffs request, that report shows, if anything, that the CIA has been forthcoming and cooperative in the present era.

Second, Plaintiffs argue that Defendants have misapplied the CIA Act because that Act applies only to "personnel information." Pls.' Mot. at 32-33. Plaintiffs claim that "[t]he Wilson Declaration does not state that the documents she addresses are personnel documents, and a review of the records indicates that they are not personnel records but the kind of records normally generated in gathering and disseminating intelligence." *Id.* at 33. This argument misses the mark. It is true that the CIA Act does not allow the CIA "to refuse to provide any information at all about anything it does." *Phillippi v. Cent. Intelligence Agency*, 546 F.2d 1009, 1015 (D.C. Cir. 1976). Instead, "[o]nly the specific information on the CIA's personnel and internal structure that is listed in the statute will obtain protection from disclosure." *Baker v. Cent. Intelligence Agency*, 580 F.2d 664, 670 (D.C. Cir. 1978); *see also Nat'l Sec. Counselors v. C.I.A.*, 960 F. Supp. 2d 101, 175 (D.D.C. 2013) (the Act "only protects 'information on the CIA's personnel and internal structure,' such as the names of personnel, the titles and salaries of personnel, or how personnel are organized within the CIA.") (quoting *Baker*, 580 F.2d at 670). These limitations do not, however, provide any support for Plaintiffs' argument that the CIA Act redactions in this case are improper because the redacted records are not "personnel *records*." Pls.' Mot. at 33 (emphasis added). Clearly, personnel "information," such as the "the names of personnel, the titles and salaries of personnel, or how personnel are organized within the CIA," *Nat'l Sec. Counselors*, 960 F. Supp. 2d at 175, can exist on documents that are not "personnel records." Accordingly, the fact that the redactions are made on the "the kind of records normally generated in gathering and disseminating intelligence information" does not show that the redacted information is not protected from disclosure under the CIA Act.

Third, Plaintiffs contend that "a deceased employee is not an employee under the statute" and that "[e]ven assuming that some of the withheld information is personnel material, no showing has been made by Lutz that these persons are still employed by the CIA."  Pls.' Mot. at 34. Plaintiffs point to no support for the proposition that a deceased employee is not covered by the CIA Act, and it finds no support in the plain language of the statute or case law.  The statute states that the CIA shall be exempt from disclosing "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency."[12]  50 U.S.C. § 3507.  This language is not limited to information related to individuals *currently* employed by the CIA.  To the contrary, the Court finds that "deceased former employees still fall within the plain language of [§ 3507] as having been 'employed' by the CIA."  *Hall v. C.I.A.*, 881 F. Supp. 2d 38, 66 (D.D.C. 2012).

Finally, in this section of Plaintiffs' cross-motion Plaintiffs makes various references to the 2013 Lutz Declaration and corresponding *Vaughn* index, and challenge certain redactions explained therein.  For example, Plaintiffs state that "[w]hat is true of the withholdings addressed by Wilson is also true of the material withheld under this Exemption 3 claim in the *Vaughn* indices attached to the Lutz declarations."  Pls.' Mot. at 33.  Plaintiffs also fault Defendants for not responding to Plaintiffs' "citation of the first entry in the Lutz Vaughn index as a misuse of the NSA Act 'sources and methods' claim."  *Id.* at 36.  These arguments are irrelevant because they are outside the scope of the Court of Appeals' remand in this case.  As discussed above, the Court of Appeals' mandate to this Court stated that "[t]he remand is limited to the issues arising from the Army's release to DiBacco during the appeal of responsive but redacted Army documents that

---

[12] Plaintiffs argue in their Reply that the plain language of the statute supports their interpretation because "the plain meaning of 'employee' is a person who is working for someone."  Pls.' Reply at 9.  But the relevant statutory language refers not to "employees" but to "personnel *employed* by the Agency."  50 U.S.C. § 3507 (emphasis added).

had been held by the National Archives."   Mandate, ECF No. 275.   Because the redactions discussed in the Lutz declaration are not within this mandate, they are not before the Court.

In sum, the Court finds that Defendants have carried their burden of showing that the redacted material is exempt from disclosure under Exemption 3 pursuant to the National Security Act and the CIA Act.   Defendants are accordingly entitled to summary judgment on this issue.

### 3.   Segregability

Finally, the Court finds that Defendants have satisfied their burden of demonstrating that no nonexempt and reasonably segregable information has been withheld.   "[E]ven if the agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)."   *Roth v. U.S. Dep't of Justice,* 642 F.3d 1161, 1167 (D.C. Cir. 2011) (citation omitted).   "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."   *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Defendants have submitted a declaration from Antoinette B. Shiner, the Information Review Officer for the Litigation Information Review Office at the CIA—an individual who holds original classification authority—in which Ms. Shiner states that she has "conducted a document-by-document and line-by-line review of the records at issue in this case and ha[s] determined that all reasonably segregable nonexempt information has been released to plaintiffs."   Decl. of Antoinette B. Shiner, ECF No. [344-1] ("Shiner Decl."), at ¶ 5.   The Court notes that Plaintiffs argued in their opposition to Defendants' Renewed Motion for Summary Judgment that Ms. Wilson's declaration did "not state, much less show, that there are no segregable portions remaining."   Pls.' Mot. at 31.   Accordingly, the Court ordered Defendants to provide a supplemental declaration specifically addressing segregability, which Defendants did by filing the

Shiner Declaration on January 11, 2017.  The Court gave Plaintiffs the opportunity to respond to

the Shiner Declaration, which they did on January 13, 2017.  Pls.' Resp. to Court's Order of

January 11, 2017, ECF No. [345].  Plaintiffs raised a number of arguments regarding the adequacy

of Ms. Shiner's declaration, none of which were persuasive.  Plaintiffs argued that Defendants had

not proffered a "plausible explanation" as to why this declaration was submitted by Ms. Shiner, as

opposed to Ms. Wilson submitting a supplemental declaration.  *Id.* at 1-2.  But Defendants *have*

offered such an explanation: Ms. Shiner replaced Ms. Wilson as Information Review Officer

shortly after Ms. Wilson executed the declaration discussed elsewhere in this Memorandum

Opinion.  The Court also rejects Plaintiffs' argument that Ms. Shiner's declaration does not comply

with Federal Rule of Civil Procedure 56, given that Ms. Shiner declares that her statements are

based on her own line-by-line review of the documents at issue.  Shiner Decl. ¶ 5.  The remainder

of Plaintiffs' arguments regarding the adequacy of the Shiner Declaration simply rehash points

made in Plaintiffs' other pleadings, which have been addressed as necessary in this Opinion.

Mostly, Plaintiffs fault Ms. Shiner for not addressing all of the various substantive issues related

to Defendants' claims under FOIA Exemptions 1 and 3, but this argument ignores the fact that the

Shiner Declaration was submitted in response to a Court order that only requested from Defendants

a narrow declaration on their position as to the segregability of any nonexempt information

redacted from the records at issue.  1/5/2017 Minute Order.

  The Court concludes that the Shiner Declaration, in concert with Ms. Wilson's declaration

which was submitted by Defendants to act as a *Vaughn* index, and the Court's review of the narrow

redactions at issue, is sufficient to persuade the Court that no nonexempt and reasonably segregable

information has been withheld.  *See Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776

(D.C. Cir. 2002) ("The combination of the *Vaughn* index and the affidavits of Gay and Davis are

sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a document cannot be further segregated."); *Mobley v. C.I.A.*, 924 F. Supp. 2d 24, 73 (D.D.C. 2013), *aff'd,* 806 F.3d 568 (D.C. Cir. 2015) ("an agency may satisfy its segregability obligations by (1) providing a *Vaughn* index that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material.").

Plaintiffs offer no evidence or persuasive argument to rebut the presumption that no reasonably segregable information has been withheld.  Plaintiffs' only arguments that the Court interprets as relating to segregability focus on a document containing minutes from a June 15, 1960 meeting of BND officials, found at page 30 of Exhibit A to the Wilson Declaration.  Although considerably more information has been withheld from this document than has been withheld from the other documents at issue, the extent of the redactions itself is not sufficient to overcome the presumption of compliance with the agency's obligation to produce reasonably segregable information.  Indeed, the Court finds that, in this case, "given the sensitive nature" of the documents at issue, "it is unsurprising that [the] document[ ] would be heavily redacted." *Hodge*, 703 F.3d at 582.  Beyond the mere fact that a fairly substantial portion of the document has been redacted, Plaintiffs' attempts to show that the document contains some redacted nonexempt information are unpersuasive.  For example, the document apparently contains the "significant points discussed" at the meeting, and the author of the document recommends not raising point 'b'—which is redacted—with "top officials."  Wilson Decl., Ex. A at 30.  From this, Plaintiffs derive that the author believed that the redacted point 'b' was "more sensitive" than a redacted point 'a,' and therefore, Plaintiffs argue, it is suspicious that both points would be classified at the same level. Pls.' Mot. at 30.  It is not.  Even accepting Plaintiffs' unfounded assumption that the

34

author's recommendation of not bringing one of the redacted points to the attention of "top officials" was driven by his or her belief that that point was "more sensitive" than the other, Plaintiffs' argument fails because of course both points could still be properly classified or withheld under the standards of Exemptions 1 or 3 regardless of their varying degrees of "sensitivity."  In short, none of Plaintiffs' arguments alter the Court's conclusion that Defendants have satisfied their burden of showing that no reasonably segregable nonexempt information has been withheld, from this or any other document at issue.

## C. Miscellaneous Points

Finally, the Court briefly addresses some miscellaneous points raised by the parties in their briefing.  First, Plaintiffs have included in their cross-motion for summary judgment and reply brief lengthy descriptions of their theory that a German double agent, Werner von Alvensleben, was involved in the assassination of President John F. Kennedy.  Pls.' Mot. a 4-10; Pls.' Reply at 1-4.  Plaintiffs claim that von Alvensleben learned the trade of political assassination from his father, a member of the Prussian noble Junker family, and later conspired to kill President Kennedy with the owner of the Texas School Book Depository Building.  *Id.* This lengthy discussion is irrelevant to the factual and legal issues raised by the pending motions and accordingly is not helpful to the Court.  The Court rejects Plaintiffs' argument that these assertions—most of which are not supported by any factual citation—make summary judgment "inappropriate."  Pls.' Mot. at 10.  Plaintiffs complain that they have not received records related to von Alvensleben, but Plaintiffs do not explain why such records would be responsive to Oglesby's FOIA requests, which requested information from a different time frame and related to different individuals.  Moreover, even if they were responsive, "the fact that a particular document was not found does not demonstrate the inadequacy of a search," *Boyd v. Criminal*

*Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007), and accordingly the Court would not find that any Defendants' searches were inadequate simply because Plaintiffs are disappointed that they did not receive documents pertaining to this individual.  Finally, as with other miscellaneous issues raised by Plaintiffs, this issue is clearly not within the Court of Appeals' narrow remand.  The Court will also not "order the government to investigate the information on this topic provided by plaintiffs and report back to the Court and the parties." Pls.' Mot. at 45.  Ordering the investigation of a particular theory regarding President Kennedy's assassination is, of course, not the Court's proper role under the FOIA.  *See Mobley*, 924 F. Supp. 2d at 51-52 ("[I]t is not the Court's proper place to decide who should or should not be the subject of intelligence gathering activities.").

The Court also acknowledges that the parties dispute whether the continuation of this case benefits the public and serves the purposes of the FOIA.  Defendants argue that Plaintiffs have not recently made efforts to share the documents they have received with the public, and complain that this case has veered off track, with Plaintiffs now raising arguments about various substantive issues irrelevant in a FOIA case.  Defs.' Mot. at 38-41; Defs.' Opp'n at 2-5, 7-8. Plaintiffs respond that prior-Plaintiff Oglesby had been reviewing the documents released in this case as late as 2008, and "had been in contact with the undersigned counsel about his work on the Gehlen Org" in 2011.  Pls.' Mot. at 43.  Plaintiffs also claim that "undersigned counsel has personally distributed copies of the released materials to researchers deeply interested in the subject." *Id.*  The Court acknowledges that this case has persisted for a lengthy period and that, as discussed above, certain portions of Plaintiffs' briefing are irrelevant to the legal issues actually remaining before the Court.  Accordingly, the Court has only herein addressed those points that are necessary to resolve the remaining arguments regarding the minimal redactions

still at issue in this case and bring this dispute to a close.  The Court has not, however, rested its

decision to grant summary judgment for Defendants on the duration or perceived lack of public

benefit of this case.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that Defendants are entitled to summary

judgment on all remaining issues.  The documents that were released to Plaintiffs during the

latest appeal do not demonstrate that Defendants' search for responsive documents was

inadequate, and the minimal redactions made to those documents are justified under FOIA

Exemptions 1 and 3.  Accordingly, the Court GRANTS Defendants' [327] Renewed Motion for

Summary Judgment and DENIES Plaintiffs' [330] Renewed Motion for Partial Summary

Judgment and Other Relief.  An appropriate Order accompanies this Memorandum Opinion.

Dated: January 18, 2017

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge